IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,   )<br>)<br>   Plaintiff,   )<br>)<br>       v.   )<br>)<br>MCCORMICK & SCHMICK'S   )<br>SEAFOOD RESTAURANTS   )<br>)<br>   Defendant.   ) | Civil Action No. DKC-11-2695 |

## MEMORANDUM OPINION

Before this Court is Plaintiff's Motion To Compel Supplemental Responses To Defendant's Answers To Plaintiff's First Set Of Interrogatories Nos. 9-10 And Defendant's Answers To Plaintiff's First Requests For Production Nos. 1-3, 5-6, 8-15, And 17-18 (ECF No. 31) (the "Motion").  Pursuant to the Court's July 2, 2012, Order (ECF No. 40), the parties met and conferred to determine whether any outstanding disputes raised in the Motion remain in light of the Court's July 2, 2012, Order and Memorandum Opinion (ECF No. 39).  The parties indicated in their Joint Status Report Regarding Outstanding Discovery Disputes In Connection With Plaintiff's Second Motion To Compel (ECF No. 31) (ECF No. 44) (the "Status Report"), that the only remaining dispute concerns Request for Production No. 1.  Status Report 1.  The Court commends the parties for working together to reach agreement regarding the other issues.

The Court has reviewed the Motion, memoranda, and applicable law.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below, the Court GRANTS IN PART the Motion.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges the following facts in the Complaint. In May 2008, Defendant hired Vernon Davis as a prep cook at its National Harbor facility. Compl. ¶¶ 9-10 (ECF No. 1). Mr. Davis has been "profoundly deaf since he was a young boy," and he communicates using sign language and reading lips. *Id*. ¶ 8. While working for Defendant, Defendant subjected Mr. Davis to a hostile work environment based on his disability. *Id*. ¶ 10. Mr. Davis informed Defendant's Human Resources department of harassment that he was experiencing, but Defendant did not stop that harassment. *Id*. Defendant then "declar[ed] Davis unable to perform his prep cook position and demot[ed] him to a dishwasher, cut[] Davis's hours, demot[ed] Davis to a utility person position and cut[] his hours, and subject[ed] Davis to unequal terms and conditions of employment." *Id*. On or about December 5, 2009, Defendant terminated Mr. Davis. *Id*. Plaintiff claims that Defendant's "unlawful employment practices" at the National Harbor facility violate "Section 102(a) of Title I of the ADA, 42 U.S.C. § 12112(a) and Title V of the ADA, Section 503(a), 42 U.S.C. § 12203(a)." *Id*. ¶¶ 11-13.

In response, Defendant contends that it "has not engaged in any unlawful employment practices, whether at the National Harbor restaurant or any other location;" that Mr. Davis did not complain that he was subjected to a hostile work environment; and that Defendant did not change Mr. Davis's job titles, hours, and employment "with discriminatory or retaliatory intent or because of Davis'[s] disability." Pl.'s Mem. in Supp. of Pl.'s Mot. to Compel Supp. Responses to Def.'s Answers to Pl.'s First Set of Interrogs. ("Pl.'s Mem. II") 14-15 (ECF No. 27) (quoting Defendant's response to Interrogatory No. 15). Defendant claims that Mr. Davis was terminated because of a "reduction-in-force decision." *See id*. at 4, 9 (quoting Defendant's responses to Interrogatory Nos. 1 and 4).

Plaintiff served its First Requests for the Production for Inspection and Copying of Documents ("Requests for Production") on December 16, 2011. Pl.'s Mem. in Supp. of Mot. 4. After receiving extensions from Plaintiff, Defendant responded to the requests on February 6, 2012, but did not produce any documents. *Id*. at 4-5. After further delay, Defendant eventually produced documents responsive to Request No. 1. *See id*. at 6-9; Reply 8. Plaintiff contends, however, that the response was insufficient. *See* Pl.'s Mem. in Supp. of Mot. 8-12.

The discovery deadline is September 11, 2012, and pretrial dispositive motions are due by September 25, 2012. June 22, 2012, Order (ECF No. 37).

## **DISCUSSION**

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). However, courts must "balance various factors to determine just how much discovery is reasonable in a given case." *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 37 (D. Md. 2000). Courts "consider both the importance of the discovery sought to the moving party, as well as the cost and burden to the producing party." *Id.*; *see also Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001) (a court may restrict discovery if "it determines that the discovery would be burdensome, duplicative, unnecessarily costly, or insufficiently probative to the issues in the litigation to warrant the expense of production"). Even so, Rule 26 and Discovery Guideline 10(e) of Local Rules Appendix A, "impose an affirmative duty on the objecting party to particularize with facts, not conclusory statements, the basis for" claiming unreasonable cost or burden. *Marens*, 196 F.R.D. at 38; Local Rule App. A, Guideline 10(e); *see also Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 498 (D. Md. 2000) ("The party claiming that a discovery request is unduly burdensome must allege specific facts that indicate

the nature and extent of the burden, usually by affidavits or other reliable evidence.  A conclusory assertion of burden and expense is not enough." (citations omitted)).  Courts have "great flexibility to order only that discovery that is reasonable for a case, and to adjust the timing of discovery and apportion costs and burdens in a way that is fair and reasonable." *Marens*, 196 F.R.D. at 37-38.

In the Motion, Plaintiff seeks a "complete" response to Request No. 1.  *See* Pl.'s Mem. in Supp. of Mot. 7.  Plaintiff failed to include with the Motion a copy of the original Requests for Production, which provided definitions and instructions, and only included copies of Defendant's responses and objections.  *See* Mot. Ex. A.  However, because Defendant does not dispute Plaintiff's quotations in the Motion of Request No. 1 and relevant definitions, the Court will assume that the quotations are accurate.

Request No. 1 sought production of "[t]he complete personnel files (*see* Definitions, Nos. 8, 9) of: a. Vernon Davis[;] b. Chamichael Robinson[; and] c. All persons identified in Interrogatory Nos. 4, 5, 6, 11."  Pl.'s Mem. in Supp. of Mot. 7.  The Requests for Production defined "personnel file" as

> not only applications for employment, evaluations, awards and the like, commonly kept in some central place and called by that name or something similar, but also all other documents concerning or primarily concerning the person referred to, regardless of where kept and regardless of by whom prepared, including all applications for employment, resumes, attendance records, employee calendars, tests, performance appraisals, awards, documents reflecting job performance and/or employee conduct, letters of commendation, reprimands, letters of termination, requests for leave, medical excuses, medical releases, medical records, medical evaluations, personnel action notices, and all other medical and personnel documents, notes taken during conversations with the person, notes taken during conversations about the person, memoranda and letters exchanged with the person and those exchanged with other persons but concerning the person, correspondence with any state employment service

>concerning the person, records of all communications with other employees concerning the person, investigative files and reports concerning or substantially concerning the person identified *whether or not they actually are contained in the personnel file*.

*Id*. at 8.

In response, Defendant objected to the request as "overly broad and unduly burdensome in that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence; and the Request seeks the disclosure of confidential personal information." Mot. Ex. A at 4. However, Defendant then stated that "[s]ubject to and without waiving its objections, [Defendant] will make documents from Davis'[s] file available for inspection and copying at a mutually agreeable place and time." *Id*.

Plaintiff asks the Court to order Defendant to produce specific documents from Mr. Davis's "personnel file," as well as "personnel files" for Mr. Robinson, individuals involved in decisionmaking concerning Mr. Davis, comparators to Mr. Davis, and "back-of-the-house/kitchen/culinary employees at Defendant's Oxon Hill facility who received any warning, counseling, or discipline related to their work performance or conduct." *See* Pl.'s Mem. in Supp. of Mot. 8-11 (internal quotation marks omitted). Later in Plaintiff's Memorandum, Plaintiff attempts to limit the burden on Defendant regarding the last category by requiring "personnel files" for "prep cooks, dishwashers, and utility persons who have worked at M&S'[s] Oxon Hill facility from May 2008 to the present." *Id*. at 11. Plaintiff's Reply then limits the entire Request to "personnel documents of Davis, the alleged harasser (Robinson), the seven managers who M&S has admitted have knowledge relevant to this case, and Davis'[s] comparators (other prep cooks, dishwashers and utility persons at the Oxon Hill restaurant)." Reply 7.

Personnel files are discoverable only in "limited circumstances" given that "personal privacy and accurate, employee evaluations are important public policy concerns." *Weller v.*

5

*Am. Home Assurance Co.*, No. 3:05-cv-90, 2007 WL 1097883, at *6 (N.D. W. Va. Apr. 10, 2007) (quoting *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C. 1993)) (internal quotation marks omitted).  In an unpublished decision, the Fourth Circuit indicated that personnel files are discoverable if they contain information relevant to the subject matter of a case and the need for the information outweighs the fileholders' privacy interests.  *See Kirkpatrick v. Raleigh Cnty. Bd. of Educ.*, No. 95-2491, 1996 WL 85122, at *2 (4th Cir. Feb. 29, 1996).

Thereafter, district courts in the Fourth Circuit have applied this rule.  For example, in *Halim v. Baltimore City Bd. of Sch. Comm'rs*, No. WMN-11-2265, 2012 WL 2366338, at *2 (D. Md. June 20, 2012), the District Court for the District of Maryland held that "[b]ecause personnel files contain very sensitive private information about non-parties to this litigation, this Court must weigh the significant privacy interests at stake against the need for the information contained in the personnel files." (citation omitted).  The Court then refused to compel production of the personnel files because the plaintiff did not provide any "legitimate need to discover the personnel files" and did not show that the "information in the personnel files will be relevant to Plaintiff's case, or will be reasonably calculated to lead to the discovery of admissible evidence." *Id*.

The District Court for the Eastern District of Virginia similarly has held that to obtain personnel files, plaintiffs "must still make a showing that the personnel files sought are relevant to the subject matter involved in the case," and "it [is] proper for the trial court to balance the privacy interests of the employees against the plaintiff's need for the requested material." *Marlow v. Chesterfield Cnty. Sch. Bd.*, No. 3:10cv18-DWD, 2010 WL 3660770, at *5 (E.D. Va. Sept. 15, 2010) (citing *Kirkpatrick*, 1996 WL 85122).  Along these lines, the District Courts for

the Eastern District of North Carolina and Northern District of West Virginia have held that personnel files are discoverable when "(1) [the] material is clearly relevant; and (2) the need for disclosure is compelling because the information sought is not otherwise readily available." *Bennett v. CSX Transp., Inc.*, No. 5:10-cv-00493-BO, 2011 WL 4527430, at *9 (E.D.N.C. Sept. 26, 2011) (quoting *James v. Peter Pan Transit Mgmt., Inc.*, 1999 WL 735173, at *11 (E.D.N.C. Jan. 20, 1999)) (internal quotation marks omitted); *Weller*, 2007 WL 1097883, at *6 (quoting *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998)).

Personnel files may also be discoverable if they contain information useful for impeachment. *See Marlow*, 2010 WL 3660770, at *6, *cf. Behler*, 199 F.R.D. at 555-60, 561 (Rule 26 permits "discovery of facts that relate to any of the six forms of impeachment," namely, bias impeachment, impeachment by contradiction, impeachment by incapacity, character for untruthfulness/prior bad act impeachment, impeachment by prior conviction, and impeachment by prior inconsistent statement). However, the party seeking the discovery should "articulate . . . specific parameters of impeachment evidence sought" to obtain the information despite the "legitimate privacy interests" of the fileholders. *See Marlow*, 2010 WL 3660770, at *6.

Examining the Motion at issue, the Court holds that Plaintiff's definition of "personnel file" is overly broad. Plaintiff includes in this definition documents that one would expect to be contained in a personnel file, such as

> applications for employment, evaluations, awards and the like, . . . resumes, attendance records, . . . tests, performance appraisals, awards, documents reflecting job performance and/or employee conduct, letters of commendation, reprimands, letters of termination, requests for leave, . . . personnel action notices, . . . [and] investigative files and reports concerning or substantially concerning the person identified.

Pl.'s Mem. in Supp. of Mot. 8. The Court finds that Plaintiff reasonably included these categories of documents in the definition. Then, however, Plaintiff unreasonably expands that

7

definition to include "employee calendars, . . . medical excuses, medical releases, medical records, medical evaluations, . . . and all other medical and personnel documents." *Id.* Plaintiff has not shown that medical documents, which are particularly personal and private, are relevant to this case and that Plaintiff has a need for these documents that outweighs the employees' privacy interests. *See Weller*, 2007 WL 1097883, at *7 (allowing discovery of personnel files excluding health records because those records were irrelevant and their disclosure would be "highly intrusive to the persons' privacy"); *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 252 (E.D.N.C. 2005) (refusing to compel production of medical or insurance information as this information was personal and irrelevant to the discrimination case). Plaintiff has also failed to demonstrate why "employee calendars" are relevant. Thus, the Court strikes these categories of documents from the definition of "personnel file."

>Plaintiff's definition also includes
>
>>notes taken during conversations with the person, notes taken during conversations about the person, memoranda and letters exchanged with the person and those exchanged with other persons but concerning the person, correspondence with any state employment service concerning the person, [and] records of all communications with other employees concerning the person.

Pl.'s Mem. in Supp. of Mot. 8. Plaintiff instructs Defendant to produce these documents "whether or not they actually are contained in the personnel file" – in other words, documents in the possession of any document holder. *Id.* (emphasis omitted). These categories are overly broad and, therefore, unduly burdensome. They could include documents irrelevant to this case, the categories are not normally considered part of "personnel files," and the documents that fall in these categories could exist in many locations. The Court, therefore, strikes these categories from the definition of personnel file. However, if the documents within these categories are found with and relate to the personnel files defined above, Defendant must produce them.

Now the Court will determine whose personnel files Defendant must produce.  Plaintiff first seeks the remaining documents from the personnel files of charging party Vernon Davis, "including: (1) documents related to the decision to transfer Davis into other jobs; (2) his 401(k) statements; (3) notes taken during conversations with or about Davis; and (4) investigative files and reports concerning Davis."  Pl.'s Mem. in Supp. of Mot. 8-9.  The terms of Mr. Davis's employment with Defendant, his conduct as an employee, and the manner in which Defendant treated him are key issues in the case.  Thus, his personnel files, as defined above by the Court, likely contain relevant information, and so should be produced.  As the District Court for the Northern District of West Virginia noted,

> Where the personnel files of employees whose particular actions are relevant is sought, "the relevance requirement is generally satisfied by the fact that the personnel file and employee evaluations should indicate the training, experience, work record, and qualifications of the, employee." *Blount*, 162 F.R.D. at 106. A plaintiff's need for this information is often sufficient to outweigh the public policy against disclosure since "the personnel files possess an inherent reliability which cannot now be duplicated through any other source." *Id*.

*Weller*, 2007 WL 1097883, at *6.  If Defendant is withholding other documents from Mr. Davis's personnel files, *see* Def.'s Opp'n 3 ("M&S has agreed to produce . . . documents *from* Davis'[s] personnel file."), Defendant should produce them.  Any "notes taken during conversations with or about Davis" should be produced only if they are found with and related to Mr. Davis's personnel files.  All files produced pursuant to this order must be produced and retained by both parties in accordance with the Stipulated Order Regarding Confidentiality of Discovery Material (ECF No. 22) ("Protective Order") entered in this case.

Second, Plaintiff seeks production of personnel files of Chamichael Robinson, "the alleged harasser and . . . a primary decisionmaker regarding the adverse actions suffered by Mr. Davis because of his protected activity," and the seven managers who, according to Plaintiff,

Defendant admitted "have knowledge relevant to this case." Pl.'s Mem. in Supp. of Mot. 9; Reply 7. Defendant objects to producing any documents contained in these individuals' personnel files because Plaintiff has not "explain[ed] why it is necessary to understand those individuals' personal employment history in order to depose them about the facts of Davis'[s] employment with M&S," and because Plaintiff's claim that "it needs 'necessary background about [their] employment' with M&S (*see* Pl.'s Br. at 9, 10) dramatically overreaches." Def.'s Opp'n 4 (final alteration in original).

The Court disagrees with Defendant. Defendant has identified these managers as having knowledge of and being involved in the employment actions taken by Defendant against Mr. Davis. *See* Pl.'s Mem. in Supp. Mot. 9-10; *see also* Pl.'s Mem. II 3-4, 8-9 (quoting Def.'s responses to Interrogatory Nos. 1, 4). Thus, their "action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses," and so their personnel files, as defined above by the Court, are discoverable. *See Weller*, 2007 WL 1097883, at *6 (citation and internal quotation marks omitted); *see also Bennett*, 2011 WL 4527430, at *9 (if personnel files "belong to 'employees whose action or inaction has a direct bearing' on the plaintiff's claims, disclosure of personnel files may be required." (quoting *Cason v. Builders FirstSource-Southeast Group, Inc.*, 159 F. Supp. 2d 242, 247-48 (W.D.N.C. 2001))); *Marlow*, 2010 WL 3660770, at *5 (in that particularly case, finding an employee's personnel file to be discoverable "only if she was involved in the decision-making process involving" the plaintiff (emphasis omitted)); *Foxx v. Town of Fletcher*, No. 1:07CV336, 2008 WL 4000626, at *1 (W.D.N.C. Aug. 26, 2008) (permitting discovery of an employee's personnel file when his "alleged conduct could prove central to [plaintiff's] remaining claims" against defendant; but prohibiting discovery of files of other current or former employees of defendant, even though they may testify against plaintiff

10

and the files "may contain" relevant information, because plaintiff had the opportunity to take their depositions to determine if they possess knowledge concerning plaintiff's claims). Additionally, these individuals' evaluations, performance appraisals, other documents reflecting job performance and/or employee conduct, letters of commendation, reprimands, and personnel action notices are discoverable for impeachment purposes.

      Finally, Plaintiff seeks personnel files of comparators to Mr. Davis, defined as "other prep cooks, dishwashers and utility persons at the Oxon Hill restaurant" from May 2008 to the present. *See* Reply at 7; Pl.'s Mem. in Supp. of Mot. 11. Although the Court finds that the time frame is overly broad, the Court will order Defendant to produce personnel files for these categories of employees. Given that Plaintiff is claiming that Mr. Davis was treated differently than similarly situated individuals, discovery of the comparators' personnel files appears reasonably calculated to lead to the discovery of admissible evidence. *See Ferry v. BJ's Wholesale Club*, No. 3:06CV226-C, 2007 WL 529958, at *2 (W.D.N.C. Feb. 14, 2007) (holding that although the defendant raised legitimate privacy concerns, defendant must produce personnel files of comparator employees given that "this information is relevant to the [p]laintiff's claims" that he was treated differently than younger employees); *Moore v. N. Telecom, Inc.*, No. 5:98CV695, 2000 WL 33682700, at *2 (E.D.N.C. Jan. 13, 2000) (ordering disclosure of employee comparator personnel files because information in those files is relevant to the plaintiff's claim that individuals with similar qualifications were treated differently from the plaintiff). The Court will restrict the time frame, however, to May 2008 through July 31, 2010, as it restricted the time frame in ruling on Interrogatory No. 11, which, in part, forms the basis of this Request. *See* July 2, 2012, Mem. Op. 10.

## **CONCLUSION**

For the reasons stated above, the Motion is GRANTED IN PART. Defendant must produce documents responsive to Request No. 1 as explained above within fourteen (14) calendar days of the date of this Memorandum Opinion and the accompanying Order and in accordance with the Protective Order entered in this case. The Court will not extend this deadline without good cause. Defendant must redact all social security numbers contained in the documents.

The Court will allow Plaintiff to submit a petition seeking reimbursement of its attorneys' fees and costs incurred in filing the Motion. Plaintiff has fourteen (14) calendar days from the date of this Memorandum Opinion and the accompanying Order to submit this petition. However, the Court encourages the parties to resolve any motion for fees as they did previously. *See* July 31, 2012, Status Report (ECF No. 43).


August 16, 2012                                             /s/
                                              Charles B. Day
                                              United States Magistrate Judge


CBD/mkh